UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>HILARIO ORTIZ-CALDERON,<br><br>                Defendant. | CASE NO. CR15-5133 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |

This matter comes before the Court on Defendant Hilario Ortiz-Calderon's ("Ortiz-Calderon") motion to suppress (Dkt. 35). The Court has considered the pleadings filed in support of and in opposition to the motion, heard live testimony of witnesses, and considered the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On February 26, 2015, a grand jury charged Ortiz-Calderon with (1) possession of methamphetamine with intent to distribute, (2) felon in possession of a firearm, and (3) illegal reentry after deportation. Dkt. 12.

On September 24, 2015, Ortiz-Calderon filed a motion to suppress. Dkt. 35. On October 8, 2015, the Government responded. Dkt. 40. On November 20, 2015, Ortiz-Calderon replied. Dkt. 44.

On December 9, 2015, the Court held an evidentiary hearing. Dkt. 53. At the hearing, Ortiz-Calderon pled guilty to illegal reentry. Dkt. 51. The Court reserved ruling on Ortiz-

1  Calderon's motion to suppress, and directed the parties to submit closing argument briefing.
2  Dkt. 53. On December 14, 2015, the parties filed simultaneous briefs. Dkts. 54, 55.

## II. FACTUAL BACKGROUND

During the evidentiary hearing, several law enforcement officers testified about the sequence of events on January 20, 2015. *See* Dkt. 53. The Court finds Homeland Security Investigations ("HSI") Special Agent Xavier Martinez's ("Agent Martinez") memory was the clearest and therefore his testimony was the most credible. The Court makes the following findings:

On January 20, 2015, Centralia Police Department ("CPD") officers contacted HSI agents to help with an investigation of Ortiz-Calderon. Ortiz-Calderon is a Mexican citizen whose native language is Spanish. Ortiz-Calderon has lived in the United States for a number of years. In 2007, Ortiz-Calderon was arrested in the United States for methamphetamine dealing.

CPD officers believed Ortiz-Calderon was illegally residing in the United States and involved in methamphetamine trafficking. CPD officers and HSI agents decided to contact Ortiz-Calderon at his home and arrest him for violating immigration laws. CPD Detective Adam Haggerty ("Detective Haggerty"), CPD Detective Chad Withrow ("Detective Withrow"), HSI Special Agent Michael Roots ("Agent Roots"), and Agent Martinez went to Ortiz-Calderon's home in plain clothes. The officers did not have a search or arrest warrant.

The officers first made contact with Ortiz-Calderon's son outside the house. The officers spoke with the son in English for a few minutes. The son claimed his dad was in Mexico, which the officers knew to be false based on their surveillance.

The officers then proceeded to the house and knocked on the front door. Ortiz-Calderon's wife, Sandra Mercado ("Mercado"), came to the door. Detective Haggerty told

Mercado they were there because of a noise complaint about a barking dog. This conversation took place in English. The officers testified that Mercado understood and spoke English very well.[1] According to Agent Martinez, the conversation about the dog ended and Mercado closed the door.

The officers decided to knock again and explain the real reason why they were there. Mercado answered the door a second time. Detective Haggerty then told Mercado her husband was in the country illegally and they needed to speak with him. This conversation also took place in English. According to Agent Martinez, Mercado told the officers to "come on in" or something similar. The officers testified they did not use force, draw their guns, or make any threats or promises. Mercado led the officers inside the house. Ortiz-Calderon was in a back bedroom. According to Agent Martinez, Ortiz-Calderon was coming out of the bedroom even before he was told to "come on out."

When the officers saw Ortiz-Calderon, they arrested him for illegal reentry and promptly removed him from the house. Once outside the house, Agent Martinez—a native Spanish speaker—read Ortiz-Calderon his *Miranda* rights in Spanish. According to Agent Martinez, the officers did not ask Ortiz-Calderon any questions about illegal reentry or drugs prior to the *Miranda* warning.[2] Agent Martinez testified that Ortiz-Calderon said he understood his rights

---

[1] For example, Agent Martinez described Mercado's English skills as a "seven approaching eight maybe" on a scale of one to ten, with one being "doesn't speak English" and ten being "native English speaker." Similarly, DEA Agent Errin Jewell ("Agent Jewell") testified that Mercado's English skills were a seven or eight in 2007. According to Detectives Haggerty and Withrow, Mercado had no difficulty conversing in English with them on January 20, 2015.

[2] Agent Martinez testified that he only asked Ortiz-Calderon whether he had any weapons on him while they were walking out of the house prior to the *Miranda* warnings.

and was willing to speak to the officers.  Ortiz-Calderon was also advised of his *Miranda* rights in 2007.

After giving *Miranda* warnings, Agent Martinez asked Ortiz-Calderon in Spanish if there were any firearms or drugs in the house.  Ortiz-Calderon responded in Spanish, and said there were firearms in the house and methamphetamine in the garage.  Detective Haggerty joined the conversation, and also asked Ortiz-Calderon about firearms and drugs in English.  Ortiz-Calderon responded to Detective Haggerty in English.  The officers testified that Ortiz-Calderon understood and spoke English very well.[3]  Ortiz-Calderon's answers to Agent Martinez and Detective Haggerty's questions were consistent.

Detective Haggerty then sought permission from Ortiz-Calderon to search his home and garage.  After obtaining oral consent, Detective Haggerty gave Ortiz-Calderon a written consent form, which explained Ortiz-Calderon's right to refuse and limit consent to the search of his home and garage.  Although the form was in English, Agent Martinez orally translated the form into Spanish for Ortiz-Calderon.  There is no evidence that any threats were made at any point.  Ortiz-Calderon signed the consent form, thereby acknowledging he fully understood his rights and "knowingly, voluntarily, without any threats or coercion, freely [gave] this consent to search."  Dkt. 40, Ex. B.  Agent Jewell testified that Ortiz-Calderon also had granted law enforcement permission to search the house in 2007.  Mercado was given the same written consent form as Ortiz-Calderon, which was read or explained to her.  Mercado signed the form.  Mercado granted law enforcement officers consent to search the house in 2007 as well.

---

[3] For example, Detectives Haggerty and Withrow both testified that there were no problems communicating with Ortiz-Calderon in English.  Similarly, Agent Jewell said he did not have any issue communicating with Ortiz-Calderon for a few hours in English in 2007.  Ortiz-Calderon's former employer also described his English as "good" in 2009.  Dkt. 40, Ex. A at 7.

ORDER - 4

After obtaining consent, the officers searched the house and garage. Mercado showed officers to the bedroom she shared with Ortiz-Calderon and pointed out firearms. Ultimately, the officers found two rifles, ammunition, and over 200 grams of methamphetamine in the house and garage.

### III. DISCUSSION

Ortiz-Calderon moves to suppress the evidence seized from his house and garage, as well as the statements he made while in custody. Dkt. 35.

**A.     Initial Entry**

Ortiz-Calderon first argues the officers' initial entry into the house to arrest him was unlawful. *Id.* at 6–7. The Government contends the officers gained entry by consent. Dkt. 40 at 8.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted). This presumption of unconstitutionality may be overcome by showing "consent or exigent circumstances." *Steagald v. United States*, 451 U.S. 204, 211 (1981). "[T]he voluntary consent of a party who has authority over the premises renders the warrantless entry of a person's home by law enforcement personnel constitutionally valid." *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008).

The Court finds the officers obtained consent from Mercado before entering the house to arrest Ortiz-Calderon. Although the officers initially used a ruse about a barking dog to get Mercado to come to the door, the officers later told Mercado the real reason why they were at the house. Specifically, Officer Haggerty told Mercado that her husband was in the country illegally and they needed to speak with him. This conversation took place in English, and the officers who were present testified that Mercado had no difficulty conversing with them. There is no

evidence the officers used force, drew their guns, or made any threats or promises to gain entry. According to Agent Martinez, Mercado told the officers to "come on in" and then led them inside the house. Under these circumstances, Mercado voluntarily gave consent for the officers to initially enter the house. Because Mercado voluntarily consented, the officers' entry into the house to arrest Ortiz-Calderon was not unlawful under the Fourth Amendment.

**B.    Search of House and Garage**

Next, Ortiz-Calderon objects to the search of his house and garage, arguing he and Mercado did not give valid consent. Dkt. 35. The Government, in turn, argues the search was conducted with voluntary consent. Dkt. 40.

For consent to be valid, it must have been voluntarily given. *Bumber v. North Carolina*, 391 U.S. 543, 548 (1968). To determine whether consent was voluntary, the Court must assess the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). In doing so, the Court considers the following five factors: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *United States v. Soriano*, 361 F.3d 494, 502 (9th Cir. 2003). "[T]hese factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry." *Id.* Thus, "[n]o one factor is determinative in the equation." *Id.* The government bears the burden of proving that consent was voluntarily given. *Id.* at 501.

In a case involving a foreign national, the Court also considers: (1) whether the defendant signed a written waiver; (2) whether the advice of rights was in the defendant's native language; (3) whether the defendant appeared to understand those rights; (4) whether the defendant had the assistance of a translator; (5) whether the defendant's rights were painstakingly explained; and

(6) whether the defendant had experience with the American criminal justice system. *United States v. Amano*, 229 F.3d 801, 804–05 (9th Cir. 2000).

Having assessed the totality of the circumstances, the Court finds that Ortiz-Calderon voluntarily consented to the search of the house and garage. Although Ortiz-Calderon was in custody at the time, this fact does not undermine the voluntariness of the consent. *See United States v. Lindsey*, 877 F.2d 777, 783 (9th Cir. 1989) ("A person in custody is capable of giving valid consent to search."). The arrest of Ortiz-Calderon was conducted peaceably, without any show of force. Indeed, the officers denied touching or drawing their guns during the incident. Shortly after arrest, Agent Martinez advised Ortiz-Calderon of his *Miranda* rights in Spanish. Ortiz-Calderon said he understood his rights and would speak with the officers. After obtaining oral consent, Detective Haggerty gave Ortiz-Calderon a written consent form. This form explained Ortiz-Calderon's right to refuse and limit consent to the search. Agent Martinez translated this form into Spanish for Ortiz-Calderon. There is no evidence that any threats were made at any point. Ortiz-Calderon signed the form, thereby acknowledging he fully understood his rights and "knowingly, voluntarily, without any threats or coercion, freely [gave] this consent to search." Dkt. 40, Ex. B. There is no evidence Ortiz-Calderon was told a search warrant would be obtained if he refused consent. Ortiz-Calderon also granted law enforcement permission to search his home in 2007.

Agent Roots's testimony does not compel a different result. Although Agent Roots observed a language barrier, Agent Roots only saw Agent Martinez speaking with Ortiz-Calderon in Spanish. Agent Roots testified that he does not understand Spanish, and thus did not understand what Agent Martinez and Ortiz-Calderon were talking about. Moreover, Agent

Roots acknowledged a very limited recollection of events and also testified that his participation was minimal.

With respect to Mercado, the Court finds under the totality of the circumstances that she voluntarily consented to the search as well. Mercado was never arrested or threatened with arrest during the incident. There is no evidence that the officers used force, drew their guns, or made any threats. Although Mercado was not advised of her *Miranda* rights, she was not in custody. Mercado was also given the same written consent form as Ortiz-Calderon, which she signed. There is no evidence Mercado was told a search warrant would be obtained if she refused consent. The evidence in the record further shows that Mercado understood and spoke English well. Finally, Mercado granted law enforcement officers consent to search her home in 2007.

The Court also notes the search did not violate *Georgia v. Randolph*, 547 U.S. 103 (2006). *Randolph* established a "narrow exception" to the rule that "police officers may search jointly occupied premises if one of the occupants consents." *Fernandez v. California*, 134 S. Ct. 1126, 1129 (2014). "*Randolph* requires that the resident who is refusing consent both be present at the house and *expressly* refuse to allow the search." *United States v. Moore*, 770 F.3d 809, 811 (9th Cir. 2014) (citing *Randolph*, 547 U.S. at 122–23). Here, neither Ortiz-Calderon nor Mercado expressly refused consent to the search. Thus, *Randolph*'s narrow exception does not apply in this case.

In sum, the Court concludes that Ortiz-Calderon and Mercado voluntarily consented to the search that resulted in the seizure of firearms and methamphetamine.

**C.    Statements**

Finally, Ortiz-Calderon moves to suppress the statements he made while in custody on January 20, 2015. Dkt. 35. In response, the Government argues Ortiz-Calderon waived his *Miranda* rights. Dkt. 40, 54.

"For inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's waiver of Miranda rights must be voluntary, knowing, and intelligent." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (internal quotation marks omitted). "A valid waiver depends on the totality of the circumstances." *United States v. Younger*, 398 F.3d 1179, 1185 (9th Cir. 2005). The defendant must be aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Viewing the totality of the circumstances, the Court finds Ortiz-Calderon knowingly, intelligently, and voluntarily waived his *Miranda* rights. The uncontradicted testimony of Agent Martinez shows that Ortiz-Calderon was advised of his *Miranda* rights in Spanish shortly after he was arrested. According to Agent Martinez, the officers did not question Ortiz-Calderon about illegal reentry or drugs prior to the *Miranda* warning. Agent Martinez further testified that Ortiz-Calderon said he understood his rights and would speak to the officers. Moreover, Ortiz-Calderon was advised of his *Miranda* rights in 2007, which further demonstrates Ortiz-Calderon was familiar with his rights and the consequences of abandoning them.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Ortiz-Calderon's motion to suppress (Dkt. 35) is **DENIED**.

Dated this 17th day of December, 2015.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 9